UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GAMALIEL ONTIVERA SALAS,
(#56805-177),

      Petitioner,

v.                                        CIVIL ACTION NO. 2:25cv313

WARDEN, FCI PETERSBURG

      Respondent.

### REPORT & RECOMMENDATION

In his Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, (ECF No. 1), pro se Petitioner Gamaliel Ontivera Salas ("Salas" or "Petitioner") seeks an Order requiring his immediate release to a Residential Reentry Center ("RRC"), also known as a halfway house, or home confinement as a result of credits earned towards early release under the First Step Act ("FSA"). Id. at 2, 6-7. He alleges these credits required that he be transferred to some form of prerelease custody as early as October 2024 and attributes his continued incarceration to the Bureau of Prisons' ("BOP") policy of denying prerelease custody to non-citizens who have immigration detainers lodged against them. Id. at 10-12.

Respondent moved to dismiss the Petition, (ECF No. 7), arguing Salas failed to exhaust administrative remedies, his claims are not cognizable in habeas, and they are barred by statutory provisions which restrict judicial review of BOP placement

1

decisions. Resp. Pet. Writ of Habeas Corpus & Mem. L. Supp. Resp't's Mot. Dismiss ("Resp't's Mem.") (ECF No. 8, at 3-4). The court provided Salas with the required notice to pro se plaintiffs under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), (ECF No. 9), Salas opposed the Motion, (ECF No. 14), and the Government replied, (ECF No. 17).

The matter was referred to the undersigned pursuant to the provisions of 18 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure. After reviewing the briefing, and the rapidly developing and conflicting body of district court authority interpreting the questions raised, this Report concludes that the most appropriate disposition for Salas's Petition is to require exhaustion of administrative remedies. Because Salas concedes he has failed to exhaust, this Report recommends the court GRANT the Respondent's Motion, (ECF No. 7), and DISMISS the Petition, (ECF No. 1), without prejudice due to failure to exhaust.

## I.  BACKGROUND

Salas is a federal inmate, currently serving a 135-month sentence for distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Sentencing Order, United States v. Salas, No. 5:17-cr-90-4 (N.D. Tex. July 13, 2018) (ECF No. 119); Pet. (ECF No. 1, at 10). He is a lawful permanent resident, but not a citizen, and presently has an immigration detainer lodged

against him. Pet. (ECF No. 1, at 6). He is currently scheduled for release from custody on September 9, 2026. Id. at 10. His Petition does not seek an earlier release—but argues that the BOP is required to transfer him immediately to prerelease custody at an RRC or to home confinement. Id. at 12. Citing what he characterizes as mandatory provisions of the FSA, Salas asserts—with significant case law support—that BOP lacks discretion to deny his transfer to prerelease custody. Id. at 10-12. According to the FSA time credit assessment attached to his Petition, Salas has earned sufficient FSA credits to be released a year early, assuming he continues to earn good time credit at the maximum rate. Id. at 15-17. That early release date is already reflected in his calculated release date of September 9, 2026, and includes 365 credits of those Salas claims to have earned. Id. at 15; BOP Inmate Locater, Fed. Bureau of Prisons, www.BOP.gov\inmateloc (search by Reg. No. 56805-177) (last accessed December 29, 2025). The credit assessment also reflects 685 FSA credits earned toward prelease custody. Pet. (ECF No. 1, at 15). Finally, the credit assessment reflects that Salas is subject to an active immigration detainer lodged by Immigration & Customs Enforcement ("ICE") on August 7, 2018. Id. at 17.

Salas began, but did not complete, the BOP process to obtain administrative relief on his claim. He first filed a grievance asserting his claims on April 3, 2025, nearly six months after the

date he claims a right to prerelease custody. BOP denied transfer to prerelease custody. Id. at 2, 13-14. He did not appeal the BOP's denial, instead arguing that the delay associated with administrative review would compound the harm to him by prolonging his incarceration. Id. at 2-5. In his reply, Salas also argues that exhaustion would be futile as a result of the written BOP policy denying prerelease transfer to inmates who have immigration detainers lodged against them, even when no final order of removal has been entered. Pet. Reply Mot. Dismiss ("Pet. Reply") (ECF No. 14, at 2, 7).

## II. ANALYSIS

Ordinarily, federal prisoners must exhaust their administrative remedies prior to filing federal habeas petitions. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished per curiam opinion); see also Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). Administrative exhaustion serves two main purposes. First, it "protects 'administrative agency authority.'" Woodford v. Ngo, 548 U.S. 81, 89 (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Requiring exhaustion ensures that agencies have an opportunity to correct mistakes in their own programs and promotes adherence to agency procedure. See id. Second, because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court,"

exhaustion preserves judicial efficiency. Id.

In Woodford, the Supreme Court held that the exhaustion requirement under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), required "proper exhaustion" – that is, "compliance with an agency's deadlines and other critical procedural rules." 548 U.S. at 90-93. That statute does not specifically encompass § 2241 claims. See 18 U.S.C. § 1997e(a) (imposing procedural requirements on actions "brought with respect to prison conditions" (emphasis added)); Richmond v. Scibana, 387 F.3d 602, 604 (7th Cir. 2004); Smith v. Angelone, 111 F.3d 1126, 1129-30 (4th Cir. 1997); Fisher v. Johns, No. 5:11-hc-2128, 2012 WL 3266910, at *1 (E.D.N.C. Aug. 9, 2012). However, the policies favoring exhaustion are unchanged whether the requirement is statutory or judicially imposed. Only proper exhaustion effectively advances those policies. See Woodford, 548 U.S. at 90-91. Accordingly, courts generally evaluate exhaustion by § 2241 petitioners by reference to the Woodford requirements. See, e.g., Hrycuna v. Ormond, No. 2:18-cv-246, 2019 WL 1304250, at *3-4 (E.D. Va. Feb. 19, 2019), R. & R. adopted, 2019 WL 1302592 (E.D. Va. Mar. 21, 2019); Long v. Wilson, No. 3:11-cv-602, 2012 WL 1957814, at *3 (E.D. Va. May 30, 2012); cf. Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632-33 (2d Cir. 2001) (discussing cause and prejudice standard applicable when a prisoner "has not fully pursued his state remedies").

Under BOP's Administrative Remedy Program, there is a four-

tiered remedy process for an inmate to raise issues relating to any aspect of his confinement. See generally 28 C.F.R. § 542. First, an inmate should informally present concerns to staff in his unit team at the BOP facility (BP-8). See id. § 542.13. If an informal complaint does not resolve the stated concerns, the inmate must submit a formal complaint (BP-9) with the Warden within 20 days to pursue an administrative remedy. See id. § 542.14. When an inmate is not satisfied with the Warden's response, he may submit an appeal to the Regional Director through the appropriate form (BP-10). See id. § 542.15. If the inmate is still unsatisfied, he may file another appeal (BP-11) to General Counsel at BOP's Central Office in Washington, D.C. See id. An inmate exhausts his administrative remedies only when he has filed a complaint at all four levels of the process.

Here, Salas filed a BP-8 on April 3, 2025, claiming he should have been released to an RRC or home confinement on October 24, 2024. Pet. (ECF No. 1, at 3-4, 13-14). Salas did not pursue any of the three remaining steps in BOP's Administrative Remedy Program to appeal the BOP's denial of immediate transfer, arguing that the "delay associated with any further appeal damages [him]." Id. at 3-4.

Although Salas concedes that he failed to exhaust the BOP's entire administrative remedy process, he argues that his failure to fully exhaust his claim should be excused because (1)"BOP's

actions clearly and unambiguously violate statutory law," (2) "the BOP's administrative remedy process takes about four months," and (3) "every day he remains incarcerated causes irreparable harm." Id. at 9-10. He also argues that exhaustion is futile because BOP categorically denied his transfer to prerelease custody due to an allegedly unlawful immigration detainer policy. Pet. Reply (ECF No. 14, at 6-7). Respondent argues that Petitioner's reasons for failure to exhaust do not excuse him from his obligation. Resp. Pet. Writ of Habeas Corpus & Mem. L. Supp. Resp't's Mot. Dismiss ("Resp't's Mem.") (ECF No. 8, at 13-15). Given that Salas did not file any grievances beyond his BP-8, he has failed to exhaust all the administrative remedies available to him.

The court notes that Salas's case presents a reasonable argument to excuse exhaustion. He observes that other defendants challenging the BOP's immigration detainer policy obtained habeas relief notwithstanding their failure to fully exhaust administrative remedies. See Adepoju v. Scales, 782 F. Supp. 3d 306, 316 (E.D.Va. 2025); Popoola v. Scales, No. 3:25-cv-390, 2025 WL 3473370, at *10 (E.D.Va. Dec. 3, 2025). But both these cases involved important factual distinctions not present here. And the result from those cases, which both recently held that the BOP could not categorically deny early transfer to prerelease custody solely on the basis of a pending ICE detainer, may well inform the BOP's actions were Salas required to present a more fulsome request

7

for administrative relief.

In both <u>Adepoju</u> and <u>Popoola</u>, defendants brought similar challenges under 28 U.S.C. § 2241, alleging that BOP had denied them prerelease custody based on their pending ICE detainers, despite the fact that neither had a final order of removal. 782 F. Supp. 3d at 309-12; 2025 WL 3473370, at *1-2. But unlike Salas, both Adepoju and Popoola had <u>already been released to home confinement</u>, and both were <u>reincarcerated</u> due to the challenged policy. 782 F. Supp. 3d at 309-12; 2025 WL 3473370, at *1-2. In rejecting the Government's argument that failure to exhaust required dismissal, both courts relied on the petitioners' reincarceration, which each court found violated the plain language of the FSA. <u>Adepoju</u>, 782 F. Supp. 3d at 316-19; <u>Popoola</u>, 2025 WL 3473370, at *11-14.

For example, the court in <u>Popoola</u> cited and relied in part on the BOP's "nationwide policy of categorically transferring individuals with immigration detainers back to prison." <u>Popoola</u>, 2025 WL 3473370, at *11. The court also noted Popoola was scheduled for release to supervision in less than two months, and that BOP had already advised the inmate that the question was "not a grievable issue." <u>Id.</u> Likewise, in <u>Adepoju</u>, the district court waived exhaustion due to BOP's national policy of rearresting non-citizens already in prerelease custody. <u>Adepoju</u>, 782 F. Supp. 3d at 316. In addition, Adepoju had not been sentenced to any term

8

of supervised release, and thus, unlike Salas, his earned FSA credits had not been applied to shorten his sentence at all. Id. at 318 n. 8.

In this case, Salas has never been released to prerelease custody and thus was not "rearrested" in violation of the FSA. Indeed, although Salas alleges that he is a non-citizen subject to the BOP policy previously declared unlawful in Adepoju and Popoola, many courts—including several in the Fourth Circuit—have held that BOP retains discretion over the timing and character of placement decisions necessary to properly administer prerelease custody. And this is so even when the total number of FSA credits exceed the 365 days already applied towards early supervised release. Rodriguez v. Hutchinson, No. 1:24-cv-5142, 2025 WL 889525, at *3-4 (D.S.C. Jan. 7, 2025); Baker v. Lovett, No. 3:12-cv-38, 2024 WL 5396705, at *9 (N.D.W.Va. Oct. 22, 2024); see also Popoola, 2025 WL 3473370, at *14 (distinguishing Rodriguez and other cases which challenged "the BOP's untimely transfers to prerelease custody"). Thus, assuming without deciding in this case that BOP's immigration detainer policy violates the FSA, Salas's transfer to prerelease custody could be denied on other grounds which would raise substantial questions about the cognizability of his claims under 28 U.S.C. § 2241 and his entitlement to relief.

The law surrounding the application of earned FSA time credits to prerelease custody is rapidly evolving with courts currently

split on how to resolve habeas petitions requesting the application of earned credit, specifically in excess of the 12-month maximum for early supervised release placement, to prerelease custody. District courts have largely approached these cases in three different ways: (1) mandating that all excess earned FSA time credits be applied toward prerelease custody; (2) determining that the application of excess earned FSA time credits is within the discretion of the BOP and therefore not subject to judicial review; or (3) concluding that the claims regarding the application of excess earned FSA time credits are not cognizable under 28 U.S.C. § 2241.

First, some courts have determined that <u>all</u> earned FSA time credits must be applied to either early supervised release or prerelease custody. Relying primarily on statutory interpretation of the word "shall" in the FSA as a mandate for the BOP to apply all earned FSA time credits, these courts conclude that credit in excess of the 365-day cap on early supervised release placement must be applied to an eligible inmate's transfer to an RRC or home confinement. <u>See, e.g.</u>, <u>Mohammed v. Engleman</u>, No. 2:25-cv-01011, 2025 WL 1909836, at *13 (C.D. Cal. July 9, 2025), <u>R. & R. adopted</u>, 2025 WL 2294325 (C.D. Cal. Aug. 8, 2025), <u>appeal dismissed</u>, No. 25-5645, 2025 WL 3549867 (9th Cir. Nov. 4, 2025) (granting the habeas petition because the BOP's immigration detainer policy violates the FSA and the language of 18 U.S.C. § 3632(d)(4)(C)

10

"imposes a mandatory obligation on BOP to transfer eligible prisoners to prerelease custody"); Mateo v. Warden, FCI Danbury, No. 3:25-cv-00814, 2025 WL 2625263, at *6-10 (D. Conn. Sept. 11, 2025) ("The BOP's decision to [deny application of credits in excess of 365 days] conflicts with the First Step Act's express language: time credits 'shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners... into prerelease custody or supervised release.'" (citing 18 U.S.C. § 3632(d)(4)(C))); Woodley v. Warden, USP Leavenworth, No. 24-3053, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) (requiring immediate placement of the petitioner in prerelease custody under the FSA).

Second, a number of courts have held that the application of earned FSA time credits to prerelease custody is reserved to the BOP's exercise of discretion, as outlined by other statutory guidance, and that the BOP's determinations are precluded from judicial review. See, e.g., Akinmadeyemi v. Warden Thompson, FCI Fort Dix, No. 24-7003, 2025 WL 2857084, at *2 (D.N.J. Oct. 9, 2025) ("Given its plenary control and broad discretion over prisoner placement decisions, the BOP is well within its authority to determine that 'a foreign citizen assigned a "deportable alien" public safety factor [in light of an immigration detainer] is ineligible to use earned [Fist Step Act] time credits for immediate release to residential re-entry programs or home confinement.'"

11

(quoting Pisman v. Warden, Allenwood FCI Low, No. 23-2048, 2023 WL 6618238, at *1 (3d Cir. Oct. 11, 2023) (per curiam)); Osorio-Calderon v. Sandstone, No. 25-cv-398, 2025 WL 2688917, at *4 (D. Minn. Sept. 19, 2025) (rejecting the magistrate judge's R&R and dismissing the Petitioner's habeas claim because the "BOP's placement decisions—such as the decision to transfer an inmate to prerelease custody—are 'not reviewable by any court.'" (quoting Barnes v. Segal, No. 23-cv-0939, 2024 WL 418695, at *4 (D. Minn. Jan. 16, 2024), R. & R. adopted, 2024 WL 416400 (D. Minn. Feb. 5, 2024))); Fargesen v. Warden FCI Pensacola, No. 3:25-cv-1018, 2025 WL 2414637, at *2 (N.D. Fla. July 30, 2025), R. & R. adopted, 2025 WL 2411753 (N.D. Fla. Aug. 20, 2025) (dismissing the habeas petition because the BOP retains discretion for custody determinations and is not required to apply "all time credits earned" or "transfer prisoners into prerelease custody or supervised release immediately upon becoming eligible"). These courts rely on the preservation of the BOP's Director's authority under 18 U.S.C. § 3621 in the FSA to exercise discretion and make placement decisions—including transfer to prerelease custody—"to the extent practicable." See 18 U.S.C. §§ 3632(d)(4)(C), 3624(c), (g), 3621(b).

Finally, some courts have opted to hold that the claims regarding application of excess FSA earned time credits are not cognizable under 28 U.S.C. § 2241. These courts find those claims

are challenges to the conditions of confinement rather than the execution of a petitioner's sentence because they ask the court to move a prisoner from one place of custody to another. See, e.g., Rafiq v. Greene, No. 1:25-cv-01409, 2025 WL 3110563, at *4-5 (M.D. Pa. Nov. 6, 2025); Taylor v. Warden, FCC Yazoo City Low I, No. 3:25-cv-100, 2025 WL 3091700, at *3 (S.D. Miss. Nov. 5, 2025) (holding that a 28 U.S.C. § 2241 challenge to the "conditions" rather than the "fact or duration" of confinement is not the proper means to seek placement in an RRC or to home confinement); Balsam v. Warden, Coleman - Low, No. 5:24-cv-360, 2025 WL 2687234, at *1, 3 (M.D. Fla. Sept. 19, 2025) (finding that the Petitioner, a lawful permanent resident of the United States who was transferred to home confinement and subsequently reincarcerated due to an outstanding immigration detainer, did not allege a cognizable issue for a habeas corpus proceeding because his claims relate to the conditions of his confinement not the execution of his sentence); Fernandez v. Warden FCI Sandstone, No. 25-cv-0662, 2025 WL 1266897, at *2 (D. Minn. Mar. 28, 2025), R. & R. adopted, 2025 WL 1263978 (D. Minn. May 1, 2025) (dismissing Petitioner's habeas claim for lack of jurisdiction because he challenges the conditions of custody, which the court holds is not cognizable on habeas review).

Against this uncertain and evolving backdrop, and given that the BOP has accelerated Salas's release to supervision by applying the maximum number of credits permitted under 18 U.S.C.

§ 3632(d)(4)(C), Salas has not made a sufficient showing to waive exhaustion on his claims for immediate transfer to prerelease custody. Salas filed only one request to obtain administrative relief and did not appeal BOP's denial. Pet. (ECF No. 1, at 3-4, 13-14). His original request was filed prior to the relevant interpretations of the statute by this and other courts within the Fourth Circuit, and his *de minimis* effort to exhaust resulted in a *de minimis* record of BOP action regarding his requests for transfer. Given the various ways courts have resolved the issues his Petition raises, it is especially important for Salas to fully exhaust his administrative remedies and allow the BOP to fully exercise its discretion by performing an individualized assessment of Salas's earned FSA time credits and examining any potential errors in their application, in light of the foregoing precedent. See Woodford v. Ngo, 548 U.S. 81, 89 (2006). Districts courts have discretion to entertain habeas petitions, but "'even where a habeas court has the power to issue the writ,' the question remains 'whether . . . that power ought to be exercised.'" Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010) (quoting Munaf v. Geren, 553 U.S. 674, 693 (2008)). Here, because there remain unresolved concerns that impact the "the orderly administration of criminal justice," Salas should fully exhaust his administrative remedies with the BOP prior to seeking relief through a 28 U.S.C. § 2241 petition. See id.

### III. RECOMMENDATION

For the reasons stated, the undersigned RECOMMENDS Respondent's Motion to Dismiss (ECF No. 7) be GRANTED and the petition (ECF No. 1) be DENIED and DISMISSED WITHOUT PREJUDICE for failure to exhaust.

### IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984);

United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge
DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

January 12, 2026

### CLERK'S MAILING CERTIFICATE

A copy of the foregoing was mailed this date to:

>Gamaliel Ontivera Salas
>56805-177
>FCI Petersburg Low
>P.O. Box 1000
>Petersburg, VA 23804

A copy of the foregoing was provided electronically this date to:

>Daniel Patrick Shean
>U.S. Attorney's Office (Norfolk)
>101 W. Main Street
>Suite 8000
>Norfolk, VA 23510

>Kent Pendleton Porter
>United States Attorney Office
>101 W Main St
>Suite 8000
>Norfolk, VA 23510

Fernando Galindo, Clerk

By ___/s/ J. L. Meyers___
Deputy Clerk

___January 12___, 2026